# THOMSON MACHINE COMPANY

*v.*

# HARVEY W. BROWN et al.

[Decided July 11th, 1918.]

1. A preliminary injunction will be issued restraining strikers from denominating employer as "unfair to labor" and its employes as "scabs" by means of a posted placard, cards handed out to prospective employes, and communications to users of the machine manufactured by employer and to labor unions whose members work thereon and in repair thereof.

2. A preliminary injunction will be issued restraining strikers from continuing to commit illegal acts in the prosecution of the strike, where continuance thereof would undoubtedly injure employer, although at the time of the issuance of the injunction no actual injury had been done.

3. An injunction restraining continuance of unlawful practices by strikers will not be denied because of the discontinuance of such practices shortly before issuance of injunction, where, strike still being in progress, recurrence of unlawful acts is probable.

4. Equity will not deny issuance of injunction restraining continuance of unlawful practices by strikers because of refusal of employer to mediate.

5. Where, upon the return of an order to show cause why an injunction should not go, respondents appeared generally contesting the merits of the application and raising no question as to jurisdiction over the parties, they will not be allowed after final argument, to object to the award of a preliminary injunction upon the ground that they are non-residents.

6. Form of an injunction in a strike case prescribed.

On bill, &c.

*Mr. Addison Ely, Jr.,* for the complainant.

*Mr. Harry Unger,* for the defendants.

LANE, V. C. (orally).

The application is for a preliminary injunction restraining, pending the suit, respondents, some of whom are striking employes of complainant and others members of International

*89 N. J. Eq.*          Thomson Machine Co. *v.* Brown.

Association of Machinists, a labor union, from committing unlawful acts in connection with a strike which has been on at the plant of complainant since December, 1917. That some of the acts committed by respondents were unlawful is undoubted. They maintain in close proximity to the plant of complainant a shanty upon which are placarded posters calling attention to the strike, denominating complainant as "unfair to labor," and referring to employes of complainant as "scabs." There was also posted upon the shanty a blacklist containing the names of those who worked for complainant, and there were handed to prospective employes of complainant cards containing similar statements to those placarded upon the shanty and other statements of similar nature. In an attempt to enforce their demands by coercion, the respondents, or some of them, communicated with users of the machines manufactured by complainant (machines used in bakeries), and also with labor unions, whose members worked with the machines and on the repair thereof, indicating that complainant was unfair. The result was that various officials of other unions communicated with complainant. A fair idea of the purpose of these letters is indicated by one received by complainant from Minneapolis purporting to be signed by the president and secretary of the Bakers' union. It contained the following statement:

"As there is many of your machines used in the bakeries in the twin cities, we hereby urge you to straighten up the machinists' organization before we are compelled to take any active actions against your machinery in this locality."

And one received from Springfield, Mass., from the Bakery and Confectionery Workers' International Union of America, which contains the following statement:

"Hoping that the friendly relations between your company and the organized machinists and union labor in general, will again be resumed in the near future, and that it will be possible for the bakers to again work with union-made Thomson machinery."

One received from the local of the same union contained the following statement:

"Therefore it was voted that the baker of Local 317 refuse to work with a Thomson machine, or co-operate with the Thomson Machine Company."

It is impossible to read the letters without reaching the conclusion that it was the purpose of the respondents to coerce complainant by refusal of customers to buy its product and refusal of employes of customers to work with the product or to repair it. In the affidavit of respondent Brown there is a denial that anyone was notified that complainant's product was unfair and that no union labor should use or work with said product. When counsel's attention was brought to this statement, and the fact that it was in direct conflict with the written evidence, the only reply was that the affiant meant that in so many words the statements were not made. Assuming that the entire affidavit of Brown is drawn in the same spirit, it is entitled to but little, if any, weight. Indeed, it is still a question, in my mind, as to whether proceedings should not be instituted to punish for perjury. No serious argument is made by respondents that the acts hereinbefore referred to were not illegal. They insist, first, that it does not appear that complainant is being injured. The free flow of labor is being obstructed; the complainant is being harassed in its business. If the threats, open and implied, of the various users of the machinery and workers thereon, are carried out, there will, unquestionably, be injury. This court does not wait until there is actual injury; it protects against anticipated injury. Second, respondents insist that the unlawful acts are not now being performed. So far as the placards are concerned, even after this court ordered their removal, they were retained until a few days ago. So far as written communications are concerned, there is one as recent as April of this year. The strike is still on, and I think it reasonable to assume that unless restrained the unlawful practices will be continued. Third, it is argued that complainant refuses to agree to mediation, and that for that reason this court ought not to interfere in its behalf. As I previously stated in this case, whatever the personal feelings of the court may be, it has no power to coerce an employer into mediation. If coercion be proper in any event, it is not the function of the court to apply it. There is a sharp line of division between complainant and respondents as to the reasons which induced complainant to refuse to submit to mediation or arbitration. Complainant is operating an open shop, and it charges that the union insisted, before agreeing to mediate, that

complainant should agree to unionize its shop. This proposition complainant rejected. Respondents do not in terms deny that this was a condition precedent; but, even if such a denial may be gathered from their papers, there is a question of fact which it is not for this court, in dealing with the legal and equitable rights of the parties, to settle. The broad question of public or governmental policy which respondents seek to inject into this issue is one which must be left to some one tribunal.

There will be an injunction against the continuance of the unlawful practices heretofore referred to. With respect to picketing, there is not sufficient evidence now before me on that subject to warrant me in acting. Leave will be reserved to complainant to apply at any time for such relief as it may be advised is proper with respect to this. It seems to me that the injunction prayed for has clear support in *George Jonas Glass Co.* v. *Glass Blowers' Association,* 77 *N. J. Eq.* 219, 223; 79 *Atl. Rep.* 262; 41 *L. R. A.* (*N. S.*) 445, and *Hinchman Coal and Coke Co.* v. *Mitchell,* 245 *U. S.* 229; 38 *Sup. Ct.* 65; *Ann. Cas.* (*1918B*) 461.

### SUPPLEMENTAL OPINION.

#### [Decided August 14th, 1918.]

LANE, V. C.

1. Upon the return of the motion to settle the order the defendants for the first time objected to the order running against the Grand Lodge International Association of Machinists with its headquarters in Washington, and its officers, relying upon *Hinchman Coal and Coke Co.* v. *Mitchell,* supreme court of the United States, Advanced Sheets, No. 3, January 1st, 1918, page 97. In that case the non-resident respondents did not appear except specially. In the present case, upon the return of the original order to show cause, all of the defendants appeared generally by solicitor and counsel who consented in open court to a continuance of the hearing on the order to show cause and to certain *ad interim* restraint. It was not until after final argument on the application for preliminary injunction that counsel on motion to settle the terms of the order endeavored to distinguish between the resident defendants and those non-resident.

Under the circumstances, in the condition in which the record now stands, I think that, so far as preliminary relief is concerned, all of the defendants must be held to have appeared generally.

The injunction will go against them all.

2. I am still of the opinion that the act of the respondents, maintaining in close proximity to the plant of the complainant, a building upon which they maintained placards upon which were printed statements of the following nature: "Don't scab. Honest jobs are plenty. Strike at Thomson Mch. Co.," &c., distributing generally and handing employes and prospective employes of complainant, cards, drawing attention to the fact that there was a strike on and that those who labored for complainant were scabs and that complainant was unfair, communicating with users of the machinery manufactured by complainant and with labor employed on such machines in the use or repair thereof with the purpose of establishing a boycott, were illegal and should be enjoined. *Jonas Glass Co.* v. *Glass Bottle Blowers' Association,* 77 *N. J. Eq.* 219; *Gompers* v. *Buck Stove and R. Co.,* 221 *U. S.* 418; 55 *L. Ed.* 797; *Hinchman Coal and Coke Co.* v. *Mitchell, U. S. Advance Sheets,* January 1st, 1918, No. 3, page 96.

3. The order presented by complainant contains all of the provisions of the order made in the *Jonas Glass Co. Case.* The strike was unaccompanied by violence. The only illegal acts of which there was any evidence was the posting of placards, the maintenance of a black-list, the distribution of the cards and the attempted boycott. How far the court will go, where a strike has been accompanied by so many illegal acts as that it is apparent that the strikers have no intention of complying with the law, in enjoining the performance of illegal acts not proven to have been performed but so closely related with those already performed as to make it apparent that there is danger that they will be indulged in, I do not find it necessary to determine on this preliminary application. The complainant can be protected by enjoining the continuance of the illegal acts which have been proven to have been performed with leave to, at any time, apply if any further illegal acts occur.

The injunction will restrain defendants—

First. From knowingly and intentionally causing or attempting to cause, by threats, offers of money, payments of money, offering to pay expenses, or by inducement or persuasion any employe of the complainant under contract to render service to it to break such contract by quitting such service.

Second. From attempting to cause any persons employed by complainant to leave such employment by intimidating or annoying such employes by annoying language, acts or conduct.

Third. From causing persons willing to be employed by complainant to refrain from so doing by annoying language, acts or conduct.

Fourth. From inducing, persuading or causing to attempt to induce, persuade or cause the employes of complainant to break their contracts of service with complainant or quit their employment.

Fifth. From threatening to injure the business of complainant or of any corporation, customer or person dealing or transacting business or willing to deal and transact business with complainant, by making threats in writing or by words for the purpose of coercing such corporation, customer or person, against his or its will so as not to deal with or transact business with the complainant.

Sixth. From displaying or circulating cards, placards, pictures or other devices either printed, painted or written, in any place reflecting upon the ability of the Thomson Machine Company to make and fulfill contracts, or in any way casting reflection upon the reputation, ability or conduct of the present employes of the Thomson Machine Company, or any of them, or any persons willing to become such employes.

Seventh. From communicating with the users of the machinery manufactured by complainant or with labor unions whose members work with said machines or on the repair thereof in such manner as to induce or persuade such users to discontinue the use of such machinery and prospective customers to refrain from purchasing such machinery and labor to refuse to work with such machines or on the repair thereof.

Settle order Monday, August 12th, 1918, chancery chambers, Jersey City (75 Montgomery street), at ten o'clock.